```
            IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF KANSAS
```

**WALTER CURTIS MOLES,**

                    **Plaintiff,**

        v.                    CASE NO. 05-3259-SAC

**FREDRICK LAWRENCE,**
**et al.,**

                    **Defendants.**

<u>**MEMORANDUM AND ORDER**</u>

This complaint was filed as a civil rights action under 42 U.S.C. 1983 by a federal detainee while he was confined[1] at the Corrections Corporation of America detention facility in Leavenworth, Kansas (CCA). Plaintiff also filed a Motion to Proceed Without Prepayment of Fees, which was granted. However, he remains obligated to pay the entire filing fee through periodic payments when available from his inmate account.

Plaintiff names as defendants several employees of the CCA, including the Warden Lawrence, Associate Warden Mundt, Chief of Security Johnson, Grievance Officer Allen, Captain Grimes, Lieutenant Roberts, and Officer Phillips. Plaintiff generally complains of four incidents: (1) Defendant Phillips' handling of his demand to use the toilet while at medical call, (2) plaintiff's placement in administrative detention, which he claims was in retaliation for his grievances rather than security reasons, (3) events surrounding plaintiff's firing from his food service job, and (4) a search of his cell, which he claims

---

[1] Plaintiff has since been transferred to a federal facility out of state.

resulted in the loss of an inmate's statement proving his grievance. He also complains about the handling of his many, many grievances filed in relation to these four incidents.

**SCREENING**

Because Mr. Moles is a prisoner, the court is required by statute to screen his complaint and to dismiss the complaint or any portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief. 28 U.S.C. 1915A(a) and (b). Having screened all the unnecessarily voluminous and repetitive materials filed by plaintiff, the court finds the complaint is subject to being dismissed for failure to state a claim.

**FRCP 8**

At the outset, the court finds plaintiff has utterly failed to present a "short and plain" statement of his claims as required by FRCP 8. Rule 8(a) pertinently provides:

> A pleading which sets forth a claim for relief . . . shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks."

Id. Plaintiff alleges he has "ongoing claims," and it was "somewhat impossible" for him to make a brief statement of them. These general allegations are not convincing. Moreover, local federal district court rules require that civil rights actions filed by prisoners be submitted on forms provided by the Court.

2

Plaintiff's original complaint had two initial pages on forms and 26 attached pages not on forms. The original complaint thus complied with neither FRCP 8 nor the local rules. The court directed plaintiff to complete civil rights forms provided by the court and submit them for filing as an amended complaint in this case. Plaintiff was directed to attach no more than five pages to the form. Plaintiff completed and submitted the forms, but continues and exacerbates his failure to comply with FRCP 8 in that he incorporates the original complaint into the amended one and has filed four amended complaints with attachments. These amendments have been treated as motions to amend to add materials to satisfy the requirement that he plead exhaustion of administrative remedies, and granted.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

Section 1997e(a), 42 U.S.C., directs: "No action shall be brought with respect to prison conditions under (any federal law) by a prisoner confined in any (correctional facility) until such administrative remedies as are available are exhausted." Exhaustion under Section 1997e(a) is a pleading requirement imposed upon the prisoner plaintiff. Steele v. Federal Bureau of Prisons, 355 F.3d 1204, 1210 (10th Cir. 2003), cert. denied, 543 U.S. 925 (2004). Plaintiff has not conformed his pleading of exhaustion to Rule 8 parameters either. However, at this juncture the court finds, without finally deciding, that full and

total exhaustion has been adequately pleaded[2].

**FAILURE TO STATE A CLAIM**

Plaintiff asserts jurisdiction under 42 U.S.C. 1983. No claim is stated under Section 1983 because none of the defendants are alleged to have acted "under color of state law."

Individual federal officials may be sued in federal court under Bivens[3]. However, CCA employees are not federal officials, and plaintiff's claims against them do not present a cause of action under Bivens. See Correctional Services Corp. v. Malesko, 534 U.S. 61 (2001); Peoples v. CCA Detention Centers, 422 F.3d 1090, 1101 (10th Cir. 2005)(There is no right of action for damages under Bivens against employees of a private prison for alleged constitutional deprivations, when alternative state causes of action for damages are available to the plaintiff.). The court has no reason to doubt that Kansas law provides an inmate with a remedy against CCA employees for actions amounting to violation of constitutional rights. See Peoples, 422 F.3d at 1105. Thus, plaintiff has not presented a basis for a cause of action in federal court.

Furthermore, most of plaintiff's factual allegations, even liberally construed, do not rise to the level of a constitutional

---

[2] Plaintiff's exhibit 13 attached to his original complaint is a page explaining the CCA's grievance procedures. It provides that a facility grievance officer will coordinate the procedure, including insuring that informal resolution has been attempted, investigating, and determining the grievance. It further provides that the grievant, if not satisfied with the decision of the facility grievance officer, may appeal to the warden/administrator. Plaintiff discusses and exhibits his administrative grievances.

[3] Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

violation and are, therefore, subject to dismissal for failure to state a claim.  The court discusses several of his claims and their deficiencies below.

**VERBAL COMMENTS BY GUARDS**

Sarcastic and other unprofessional comments made to an inmate by a guard do not rise to the level of a constitutional violation.  Thus, plaintiff's allegations that defendants said certain things about and to him fail to state a claim.  See e.g., Bennett v. Passic, 545 F.2d 1260, 1263 (10th Cir. 1976); Cumbey v. Meachum, 684 F.2d 712, 714 (10th Cir. 1982).

**PLACEMENT IN ADMINISTRATIVE SEGREGATION**

Plaintiff's allegations regarding his placement in administrative segregation (ad seg) also fail to state a claim[4]. Plaintiff contends he was segregated in retaliation for his filing of grievances.  He also claims he did not receive a fair hearing before his segregation.

In order to prevail on a claim of retaliation plaintiff must

---

[4]   Defendant Allen responded to one of plaintiff's grievances as follows:

According to the administrative detention order, inmate was placed in segregation pending a classification hearing. Upon Chief Johnston receiving a request from inmate Moles, which was perceived as disrespectful in nature, and also due to inmate's persistent allegation that his life was placed in danger, due to receiving a job in the kitchen for a short period of time, the Chief of Security determined Inmate Moles should be placed in segregation on Pre-hearing Detention status pending a Classification Review.
* * *
Inmate Moles has approximately 12 separatees listed, which could possibly place him in danger, if other inmates discover the large amount of separatees.

Upon the Chief of Security reviewing the contents in the request form, it was determined that Inmate Moles has the characteristics of inmates who unintentionally place themselves in harms way, by bringing unnecessary attention to themselves and the administration.

Therefore, for the safety and security of the institution Inmate Moles has been placed on Administrative Segregation until the Chief of Security determines Inmate Moles would be safe in general population.

prove that the actual motivating factor precipitating his move to ad seg was retaliatory; that but for the allegedly retaliatory motive, he would not have been moved to ad seg. Smith v. Maschner, 899 F.2d 940, 947, 49-50 (10th Cir. 1990). A transfer is not retaliatory if it is "reasonably related to legitimate penological interests." Frazier v. Dubois, 922 F.2d 560, 562 (10th Cir. 1990), *quoting* Turner v. Safley, 482 U.S. 78, 89 (1987).

Plaintiff's claims are refuted by his own exhibits. Plaintiff exhibits the first Detention Order issued, which indicates he was initially placed in ad seg for a valid reason, namely "pending a classification hearing." He exhibits two other Detention Orders issued subsequently which also indicate valid reasons for segregation: his separatee status[5] and his statement in a grievance that he may have been placed in danger[6]. In any event, plaintiff had no right to a hearing prior to placement in administrative segregation. He was entitled to notice and an opportunity to voice his opposition. There is no showing that this rudimentary due process was denied. In fact, plaintiff's exhibits indicate he received notice and classification reviews were provided.

---

[5] Plaintiff was informed through the grievance process that the perceived threats for security classification purposes are not limited to inmates already in the same unit or prison.

[6] Plaintiff asserts that 3 different orders were issued to cover up defendants' wrongful acts. However, the first order was obviously an initial notice, and issuing a second with reasons for continued ad seg was reasonable. Plaintiff was also informed during the administrative process that the third order was issued to correct an error. Plaintiff exhibits the orders in question and there is an error on one that was corrected on the other. Plaintiff makes much of missing signatures and additions, but none indicate a cover-up or suggest a denial of due process. He does not deny having received them.

Furthermore, plaintiff does not deny that he is a "separatee" or has a list of "separatees," apparently meaning other inmates are known who might try to harm him. Plaintiff also exhibits documents substantiating he complained to prison staff that he could have been placed in danger by their failure to discover for 3 days that he had a list of separatees[7]. Plaintiff also exhibits the grievance he filed which was considered recalcitrant. The prison officials' interpretation of that grievance was not unreasonable. While Due Process requires that a pretrial detainee not be punished prior to his lawful conviction, those awaiting trial may be subjected to conditions and restrictions of incarceration incident to some legitimate government purpose other than punishment. Peoples, 422 F.3d at 1106, *citing* Bell v. Wolfish, 441 U.S. 520, 535 (1979). The facts alleged by plaintiff do not show that he would not have been placed in ad seg but for a retaliatory motive. Instead, his allegations and exhibits show legitimate reasons for his segregation.

**VIOLATION OF RIGHT TO PRIVACY**

Plaintiff's allegations describing the single toilet incident also fail to state a claim. Defendant Officer Phillips' initial refusal to allow him to use the toilet based on the lack of one

---

[7] In response to a letter plaintiff wrote to the warden on June 2, 2005, the warden answered, "You were seen in segregation reviews. You were told that you were not locked up because you filed a request but rather what was in the request. Your request stated your life may be in danger and an investigation will occur based on your statement." These materials are attached to plaintiff's First Motion to Amend (Doc. 5).

7

in the medical call area is not shown to be unreasonable, particularly since she eventually located and escorted him to a toilet. Plaintiff does not allege the violation of his privacy arose out of an unreasonable search or seizure, or that he was denied due process. While prisoners retain a right to bodily privacy, it is limited by legitimate penological interests in prison security. Adkins v. Rodriguez, 59 F.3d 1034, 1037 (10th Cir. 1995); Cumbey, 684 F.2d at 714; see Levoy v. Mills, 788 F.2d 1437, 1439 (10th Cir. 1986); cf. Hudson v. Palmer, 468 U.S. 517, 522-30 (1984). Courts are to consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted. Bell, 441 U.S. at 559; Levoy, 788 F.2d at 1439. The Tenth Circuit Court of Appeals has stated that the frequency with which prison guards watch inmates of the opposite sex undressing, using toilet facilities, and showering is an important factor in assessing the constitutionality of prison practices. See Cumbey, 684 F.2d at 714; Levoy, 788 F.2d at 1439; cf., Hayes v. Marriott, 70 F.3d 1144, 1146-47 (10th Cir. 1995).

The circumstances alleged by plaintiff in this case indicate he was not in his cell and, upon his insistence, had to be accompanied by a guard to a toilet, which was not for his normal use. The toilet was in a ward with other inmates and was surrounded by only a partial wall. Even if the conduct of defendant Phillips in connection with this incident was unacceptable, it is hardly shown to be "of a sort repugnant to the conscience of mankind." See Hudson v. McMillian, 503 U.S. 1,

8

9-10 (1992).  In sum, sufficient bad facts are not described as to this single incident amounting to a federal constitutional violation.

**MISHANDLING OF GRIEVANCES**

Plaintiff's complaints concerning the handling of his grievances mainly consist of his opinion that defendant Allen did not properly investigate his claims, and the warden was not answering his appeals.  Plaintiff's own exhibits indicate defendant Allen interviewed some of his potential witnesses, and they denied knowledge of the toilet incident.  Plaintiff's own exhibits also indicate the warden eventually responded to his appeals, though not within the fifteen days before plaintiff complained.  Plaintiff has no right to immediate answers from prison officials, or answers to every one of the many questions he submits.  Plaintiff's grievances are so numerous, often lengthy, nit-picking, and recalcitrant that cataloging, investigating, and responding to them all was undoubtedly a burden to CCA officials.  It appears from the record that a good faith effort was made to investigate and resolve plaintiff's repetitive and often petty grievances.

**FIRING FROM JOB**

Plaintiff's allegations that he waited a few weeks for a job, worked two days, and then was fired for having a "separatee issue" also fail to state a claim.  The policy exhibited as relevant by plaintiff indicated security clearance was required

9

for a job.  That policy also indicated separatee status was a reason to deny security clearance.  Plaintiff alternatively contends that defendants were deliberately indifferent and must have exposed him to possible danger for 3 days, if indeed there was a separatee issue.  This theory also fails, since plaintiff was immediately placed in segregation once his status became known, and no actual injury is alleged to have occurred.

**DENIAL OF ACCESS**

Plaintiff alleges that on June 2, 2005, while he showered, CCA staff searched his cell and legal work, and that "several documents came up missing."  The missing documents he specifies are administrative request forms which had been answered by staff and a statement he had obtained from a witness to the toilet incident.  Plaintiff contends he has been denied legal access as a result, because his ability to prove his grievances was impeded.  He also complains defendants refused to provide copies[8] of some of the grievances he filed and full names of some potential witnesses.

It is well-established that a prisoner's right of access to the courts is a fundamental right protected by the Constitution.  Bounds v. Smith, 430 U.S. 817, 821 (1977).  Thus, prison officials may not retaliate against or otherwise harass an inmate because he or she has exercised this right.  Maschner, 899 F.2d at 947 (prison officials may not employ otherwise legitimate

---

[8] Plaintiff has the responsibility to prepare and maintain copies of grievances, claims and pleadings filed by him. It is neither the prison staff's nor the court staff's responsibility, except under exceptional circumstances, to make and return copies of all his filings.

10

transfers as retaliatory tools against an inmate who has exercised his or her right to access the courts). Plaintiff's claim could survive insofar as the denial of access to the grievance procedure effectively denied him access to the courts. Id. However, in this case, plaintiff does not allege facts demonstrating that any court action filed by him has been dismissed or otherwise significantly impeded due to the loss of the papers specified or denial of copies.

**CRUEL AND UNUSUAL PUNISHMENT**

Plaintiff's claims of cruel and unusual punishment are too conclusory to entitle him to relief. No facts are alleged showing defendants knew plaintiff faced a substantial risk of serious harm to his health or safety and disregarded that risk. See Farmer v. Brennan, 511 U.S. 825, 847 (1994). Plaintiff's claims that he was denied privileges, access to programs, and materials while in segregation are not supported by sufficient facts to show a constitutional violation or that conditions in other units at the facility were significantly different. Conclusory allegations are not sufficient to state a claim. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

**SUMMARY & ORDER**

For the foregoing reasons, the court concludes the complaint is subject to being dismissed for failure to state a claim. Plaintiff is given twenty (20) days to show cause why this action should not be dismissed for the reasons stated in the foregoing

Memorandum and Order.  Plaintiff is directed to file his response to this order with the caption: "Plaintiff's Response to Court Order to Show Cause."  He is further directed to limit his response to 5 pages and to not attach any materials to his response that have already been filed.  If plaintiff fails to timely respond, this action may be dismissed without further notice.

**IT IS THEREFORE ORDERED** that plaintiff is granted twenty (20) days in which to show cause why this action should not be dismissed for failure to state a claim.

**IT IS SO ORDERED.**

Dated this 7th day of June, 2006, at Topeka, Kansas.


                                         s/Sam A. Crow
                                         U. S. Senior District Judge